SEAN C. GALLAGHER, J.:
{¶ 1} 635 W. Lakeside, Ltd., Arahova Trust, Gus Georgalis, Amy Georgalis, and Nicholas Zarnas appeal the $823,106 judgment, plus $67,976.25 in attorney fees, entered in favor of Pamela Akerstrom, a unit owner at the Cloak Factory Condominiums ("Cloak Factory"). Despite awarding Akerstrom damages individually, the trial court ordered Akerstrom to "apply any proceeds of this judgment to the benefit of the unit owners" through the Cloak Factory Home Owners Association (the "Association")-a tacit indication that Akerstrom was not the party entitled to the damages awarded. The Association was not a party in the lawsuit, nor were the remaining unit owners who are represented by the Association. The trial court erred in awarding a monetary judgment in favor of Akerstrom upon damages incurred by a nonparty.
{¶ 2} Akerstrom is the president of the Association, and has been since April 2015. She purchased a Cloak Factory unit in 2006, and is responsible for maintenance and other expenses based on her 2.48 percent *443 ownership of the Cloak Factory. Individually, she brought a claim for declaratory relief under R.C. 5311.23(B) to oust the previous board members, the Georgalises and Zarnas, all of whom were affiliated with Arahova Trust-the owner of the unsold units at Cloak Factory. Amy Georgalis and Zarnas were appointed to the board in 2010. 635 W. Lakeside, Ltd., is owned by Gus Georgalis, who is also trustee of the Arahova Trust. As of 2014, Arahova Trust owned just over 55 percent of the 28-unit Cloak Factory. The permanent injunction was granted, leading to Akerstrom's ascension to the Association's board.
{¶ 3} Akerstrom advanced a claim for breach of fiduciary duty against Zarnas and Amy Georgalis, along with a claim for breach of the Association's Declaration and Bylaws for Arahova Trust's alleged failure to pay the monthly assessment obligations between 2006 and 2014. Both claims were purportedly advanced under R.C. 5311.23. Despite naming herself individually as the sole plaintiff in the action, Akerstrom readily admitted that she was "not seeking any damages personally [and any] damages will go to the Association." Tr. 277:12-13. Indeed, in the complaint, Akerstrom sought "judgment against Defendants in an amount to be determined at trial and that such judgment be paid directly to the Association. " (Emphasis added.) Amended complaint ¶ 89. There were no allegations of individual damages relating to Akerstrom.
{¶ 4} The Association established two accounts of note, one for the operating and maintenance expenses and another for the reserve account the Association was required to maintain. The operating account was opened in November 2007 and the reserve account in January 2008. There are no records of the expenses and reserves before those dates. Akerstrom claims that Arahova Trust failed to pay its share of the assessment and that of the reserve account to which the unit owners yearly contributed since 2006.
{¶ 5} Akerstrom hired Robert Torok, a forensic accountant, to prove the Association's damages. Torok reviewed the monthly bank statements of the two accounts, but did not ascertain the source of the funds deposited. Akerstrom did the same, but her numbers differed from the expert's. Tr. 281:22-282:2. According to Torok, between 2006 and 2014, the unit owners of the Cloak Factory collectively owed $1,567,599 for the assessments and $156,760 for the reserve account based on the Association's budget statements for each year. The total reserve obligation represented a fixed amount equaling 10 percent of the total assessments. Torok conceded that the budgets for 2008 and 2009 were unavailable, so he used the surrounding years as guides. Torok determined that the defendants owed $1,074,090 for the operating assessments between 2006 and 2014.
{¶ 6} After simply adding the deposits between 2008 and 2014, totaling $805,395 for the operating account, Torok assumed that the nondefendant unit owners contributed $493,509 of that amount between January 2007 and December 2014, despite his concession that he only reviewed each unit owner's obligation as a percentage of the budget and did not review based on the actual billing or payments. Tr. 354:3-6. In other words, Torok was asked to assume that the defendants did not meet their obligation, the very fact of consequence Akerstrom was required to prove by a preponderance of the evidence. Akerstrom contended that there was evidence that no unit owner was delinquent on the assessments or reserve contributions, and therefore, it could be inferred that the nondefendant unit owners paid all that *444 was required. Torok, therefore, concluded that the defendants only contributed $311,886 owed for all the assessments between 2006 and 2014 ($805,395-$493,509).
{¶ 7} Torok then calculated that the defendants owed $762,204 for the assessment owed between 2006 and 2014 ($1,074,090-$311,886). Torok did the same for the reserve account and determined that the defendants owed $62,092 between 2006 and 2014, based on the amount deposited between 2008 and 2014. The trial court accepted Torok's conclusions.
{¶ 8} In addition to the unpaid fees issue, Akerstrom alleged that Amy Georgalis and Zarnas breached a fiduciary duty owed to the Association by not ensuring that Arahova Trust paid its share of the assessment. Tr. 451:3-11. Akerstrom did not contest this assertion that the developer or its agents did not owe a fiduciary duty to the individual unit owners of the Cloak Factory. Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos. , 67 Ohio St.3d 274, 283, 617 N.E.2d 1075 (1993) (R.C. Chapter 5311 comprehensively defines and regulates the law of condominium development and creates no fiduciary obligation between the developer or its agents and the individual unit owners or the condominium associations). The trial court concluded that Zarnas and Amy Georgalis had "breached their fiduciary duty when they individually served as Board members by failing to act as board members and by taking actions that have harmed the unit owners" since they began serving as board members in 2010. According to the trial court, this meant that Zarnas and Amy Georgalis were jointly liable for the damages caused to the Association between 2006 and 2014.
{¶ 9} The trial court erred by imposing a judgment in favor of Akerstrom for damages incurred by a nonparty.
{¶ 10} Akerstrom is not authorized to maintain an action to recover monetary damages on behalf of the Association. It is well settled that "actions must be brought in the name of the party who possesses the substantive right being asserted under applicable law." Shealy v. Campbell , 20 Ohio St.3d 23, 24, 485 N.E.2d 701 (1985). R.C. Chapter 5311 creates rights and remedies that do not exist at common law, and therefore, the statutory section "was meant to comprehensively define and regulate the law of condominium development * * *." Belvedere Condominium Unit Owners' Assn. at 282, 617 N.E.2d 1075. R.C. 5311.20 provides that a unit owners association, such as the Association, may sue or be sued as a separate legal entity.
{¶ 11} Within this framework, the legislature has provided three mechanisms upon which an aggrieved condominium owner may seek enforcement of the condominium association's instruments in lieu of relying on the Association to act. A developer may be liable in a civil action for harm caused to any person or the unit owners association for the failure to comply with any lawful provision of the condominium instruments. R.C. 5311.23(A). The amended complaint, however, advanced no claim for individual damages incurred by Akerstrom. Amended complaint at ¶ 89.
{¶ 12} In the alternative or in conjunction with a division (A) action, any interested person, including the unit owners association or an individual unit owner, may file a declaratory judgment action: (1) to determine that person's legal relations under the operating instruments or (2) to obtain an injunction to prevent the failure to adhere to the condominium instruments. R.C. 5311.23(B). In addition, one or more unit owners may file a class action on behalf of all unit owners. R.C. 5311.23(C). The latter section is dependent on compliance *445 with all applicable class-action rules. Knittle v. Big Turtle II Condominium Unit Owners Assn. , 46 Ohio App.3d 59, 61, 545 N.E.2d 916 (11th Dist.1988). An action under R.C. 5311.23 may be commenced by the unit owners association in its own name, in the name of the board of the association, or in the name of the association's managing agent. R.C. 5311.23(D).
{¶ 13} Akerstrom contends that she was entitled to file an action for monetary relief on behalf of the Association for Arahova Trust's failure to comply with the declarations and bylaws because, under 5311.23(A)-(B), an individual unit owner was entitled to file a declaratory judgment action or impose liability for the harm caused to the individual unit owner. See Gall v. Mariemont Windsor Square Condominium Assn. , 175 Ohio App.3d 689, 693, 2008-Ohio-1276, 888 N.E.2d 1144 (1st Dist.). Akerstrom's reliance is misplaced. Her claim for monetary relief for the benefit of the Association is outside the scope of the injunctive relief sought in the declaratory judgment counts of her amended complaint, and she conceded in the amended complaint and through her testimony that the damages sought were those incurred by the Association. CSAHA/UHHS-Canton, Inc. v. Aultman Health Found. , 5th Dist. Stark No. 2010CA00303, 2012-Ohio-897, ¶ 141, 2012 WL 750972 (monetary award is outside the scope of injunctive relief). Further, Akerstrom did not file a class action on behalf of the other unit owners.
{¶ 14} R.C. 5311.23(C) and 5311.23(D) provide two mechanisms to seek damages for the benefit of the unit owners without naming the individual unit owners as plaintiffs, either through a class action complaint or by the Association on behalf of the unit owners. Akerstrom took neither path and, instead, filed the action individually seeking damages for the Association and other nondefendant, unit owners. Her only defense to failing to comply with R.C. 5311.23(D) was impossibility-the Association could not file an action to hold the defendants liable for the alleged unpaid assessments because the board was comprised of the defendants representing the unit owner, Arahova Trust. Akerstrom ignores the fact that she was entitled to seek injunctive relief under R.C. 5311.23(B) to replace members of the board, if Arahova Trust's ownership of the Cloak Factory was not sufficient to entitle its agents to serve on the Association's board.
{¶ 15} Akerstrom was successful in this respect. Akerstrom became a member of the board of the Association in April 2015, over two months before the amended complaint was filed. Impossibility is not a defense when the statute provides the tools to accomplish that which the legislature authorized.
{¶ 16} R.C. 5311.23 did not authorize Akerstrom to maintain a lawsuit in her individual capacity for the benefit of the Association, a legal entity capable of protecting its own rights. Under R.C. 5311.23 and 5311.20, the Association is the party entitled to enforce the obligations possessed or imposed upon the unit owners association by statute or otherwise. Akerstrom was not statutorily authorized to advance claims on behalf of the Association, and therefore, the trial court was without authority to award a judgment under R.C. 5311.23 for the benefit of a nonparty.
{¶ 17} That the trial court treated the action as one for breach of contract in the alternative to the statutory action under R.C. 5311.23 is irrelevant to our conclusion. As the trial court indicated, the contractual relationship was between the defendants and the Association, not Akerstrom, *446 and thus the "contractual" damages were incurred by the Association, not Akerstrom. Even if we considered this as a breach of contract action, Akerstrom could not seek damages on behalf of the Association, a legal entity capable of suing or being sued. R.C. 5311.20.
{¶ 18} In light of the foregoing, the trial court also erred by awarding judgment on the breach of fiduciary duty claims against Zarnas and Amy Georgalis. Even if a common law duty existed, see, e.g., Kleemann v. Carriage Trace, Inc. , 2d Dist. Montgomery No. 21873, 2007-Ohio-4209, ¶ 49, 2007 WL 2343756 ( R.C. 1702.30 controls the condominium unit owners association board members' conduct and not a common law fiduciary obligation), in order to prove a breach of fiduciary duty claim, the plaintiff must establish (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom. Lombardo v. Mahoney , 8th Dist. Cuyahoga No. 92608, 2009-Ohio-5826, ¶ 18-19, 2009 WL 3649997. In light of the conclusion that Akerstrom only asserted damages on behalf of the Association, the breach of fiduciary duty claims must fail for the want of damages. See, e.g., MADFAN, Inc. v. Makris , 8th Dist. Cuyahoga No. 103655, 86 N.E.3d 707, 2017-Ohio-979, ¶ 8, citing Johnson v. Univ. Hosps. of Cleveland , 44 Ohio St.3d 49, 58, 540 N.E.2d 1370 (1989), and Carey v. Down River Specialties, Inc. , 8th Dist. Cuyahoga No. 103595, 2016-Ohio-4864, ¶ 29, 2016 WL 3632498.
{¶ 19} Akerstrom filed an action to assert the rights of a nonparty and sought monetary damages solely for the benefit of that nonparty in the amended complaint. Awarding damages against a defendant in favor of nonparties raises serious due process concerns, especially when the nonparties have other remedies at their disposal to preserve their own rights. Skinner v. Turner , 30 Ohio App.3d 232, 235, 507 N.E.2d 392 (8th Dist.1986), fn. 4 (damages cannot be awarded for injuries to nonparties); Aultman Health Found. , 5th Dist. Stark No. 2010CA00303, 2012-Ohio-897, ¶ 141, 2012 WL 750972. The judgments in favor of a nonparty cannot stand. Akerstrom failed to allege or present any claim for damages caused to her individually. Her sole claim for damages were those caused to the Association, a separate legal entity. Without any allegation of damages incurred by the plaintiff in this case, judgment must be entered in favor of the defendants. We render no opinion as to the injunctive relief entered enforcing R.C. 5311.08, because that is outside the scope of this appeal. The monetary judgments entered in favor of Akerstrom "for the benefit of the Association" and the derivative judgment for attorney fees imposed in conjunction with the monetary award are reversed and vacated.
EILEEN A. GALLAGHER, A.J., and ANITA LASTER MAYS, J., CONCUR