[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Chagrin Realty, Inc. v. Testa,* Slip Opinion No. 2018-Ohio-4751.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4751

CHAGRIN REALTY, INC., APPELLANT AND CROSS-APPELLEE, *v.* TESTA, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Chagrin Realty, Inc. v. Testa,* Slip Opinion No. 2018-Ohio-4751.]

*Taxation—Charitable-use real-property exemption—Property owner does not use property "exclusively for charitable purposes" under R.C. 5709.12(B) and does not qualify as a charitable institution under R.C. 5709.121 based on its own activities and sole use of property, which is to lease it—Board of Tax Appeals' decision affirming tax commissioner's denial of exemption affirmed.*

(No. 2017-0469—Submitted September 25, 2018—Decided November 30, 2018.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals, No. 2011-2523.

_____

**Per Curiam.**

{¶ 1} In this case, appellant and cross-appellee, property owner Chagrin Realty, Inc., challenges a decision of the Board of Tax Appeals ("BTA") affirming

appellee and cross-appellant tax commissioner's denial of a charitable-use property-tax exemption for the subject property. The BTA found that Chagrin Realty did not qualify for that exemption under R.C. 5709.12 or 5709.121, because Chagrin Realty's sole purpose is to own and lease the subject property. We affirm the decision of the BTA.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Chagrin Realty is an Ohio nonprofit corporation exempt from federal income tax under section 501(c)(2) of the Internal Revenue Code, 26 U.S.C. 501(c)(2) (granting exemption to "[c]orporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt under this section"). Chagrin Realty leases the property at issue to a single nonprofit tenant, the Community Dialysis Center ("CDC"). The CDC operates a hemodialysis facility on the property and is the sole member of the Leonard C. Rosenberg Foundation ("Foundation"). The Foundation enjoys section 501(c)(3) status and is the sole member of Chagrin Realty. *See* 26 U.S.C. 501(c)(3) (granting federal-income-tax exemption to "[c]orporations * * * organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes").

{¶ 3} The Centers for Dialysis Care, Inc., is a for-profit management company that contracts with the CDC and employs all personnel who work for the CDC. The CDC wholly owns this for-profit management company.

{¶ 4} Chagrin Realty disburses the rental income from the property lease, less expenses, to the Foundation; the monthly base rental payment is approximately $24,959.52, which equals $299,514.24 annually.

{¶ 5} Chagrin Realty filed an application for real-property-tax exemption relating to the subject property for tax years 2003, 2004, and 2005. The tax commissioner determined that Chagrin Realty did not satisfy the requirements for

2

exemption under R.C. 5709.12 or 5709.121 and denied the application. Chagrin Realty appealed to the BTA.

{¶ 6} The BTA rejected Chagrin Realty's contention that its 501(c)(2) federal tax status and its reliance on vicarious-exemption theories qualified it as a "charitable" institution. Because Chagrin Realty's use of the property consisted of only leasing it, the BTA determined that Chagrin Realty did not satisfy the requirements of R.C. 5709.12 or 5709.121 and affirmed the tax commissioner's final determination denying the exemption.

{¶ 7} The BTA issued its decision in April 2014. Nearly three years later, in March 2017, Chagrin Realty filed a motion asking the BTA to reissue its April 2014 decision, alleging that its counsel had recently discovered that the BTA had sent its decision to Chagrin Realty at an incorrect address. The BTA granted the motion.

{¶ 8} Chagrin Realty appealed to this court from the reissued decision. The tax commissioner cross-appealed, challenging the BTA's authority to reissue its decision. On July 24, 2017, we ordered Chagrin Realty to show cause why the appeal should not be dismissed on those grounds. *See* 150 Ohio St.3d 1402, 2017-Ohio-6912, 78 N.E.3d 904. On November 1, 2017, we determined that Chagrin Realty had shown cause why the appeal should not be dismissed. 151 Ohio St.3d 1423, 2017-Ohio-8371, 84 N.E.3d 1061. Thus, we have already resolved the jurisdictional issue raised in the tax commissioner's cross-appeal.

## II. ANALYSIS

{¶ 9} The central issue before us is whether Chagrin Realty qualifies for the charitable-use property-tax exemption under R.C. 5709.12(B) and 5709.121(A) because it is a 501(c)(2) organization that holds and leases property and distributes the lease proceeds to a separate corporation that itself is exempt from federal taxation.

{¶ 10} On appeal, we must determine whether the BTA's decision is both "reasonable and lawful." R.C. 5717.04. We defer to the BTA's factual findings "if they are supported by reliable and probative evidence, and we afford deference to the BTA's determination of the credibility of witnesses and its weighing of evidence subject only to an abuse-of-discretion review on appeal." *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 10; *see also Rural Health Collaborative of S. Ohio, Inc. v. Testa*, 145 Ohio St.3d 430, 2016-Ohio-508, 50 N.E.3d 486, ¶ 24, citing *Dialysis Clinic, Inc. v. Levin*, 127 Ohio St.3d 215, 2010-Ohio-5071, 938 N.E.2d 329, ¶ 31-35 (affirming BTA's determination of property owner's charitable status after concluding that that determination was "reasonable and lawful"). But we "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001).

## A. The scope of the charitable-use exemption under R.C. 5709.12(B) and 5709.121(A)

{¶ 11} R.C. 5709.12(B) provides that "[r]eal and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation." Under R.C. 5709.12(B), any institution, whether charitable or not, "may qualify for a tax exemption if it is making exclusive charitable use of its property." *Cincinnati Community Kollel v. Testa*, 135 Ohio St.3d 219, 2013-Ohio-396, 985 N.E.2d 1236, ¶ 23.

{¶ 12} R.C. 5709.121(A) expands the meaning of R.C. 5709.12(B)'s phrase "used exclusively for charitable purposes" to include situations in which property ownership and property use do not coincide. *ShadoArt Prods., Inc. v. Testa*, 146 Ohio St.3d 263, 2016-Ohio-511, 55 N.E.3d 1065, ¶ 36. R.C. 5709.121(A) provides that "[r]eal property and tangible personal property belonging to a charitable or educational institution * * * shall be considered as used exclusively for charitable or public purposes * * * if it meets" one of the requirements specified by that

statute.  Thus, although R.C. 5709.121(A) itself does not create any exemption, *ShadoArt Prods.* at ¶ 41, it links certain property uses to R.C. 5709.12(B)'s exclusive-charitable-use exemption, *id.* at ¶ 36.

{¶ 13} "Special treatment under R.C. 5709.121 depends on the owner's qualifying as a 'charitable or educational' institution." *Dialysis Clinic*, 127 Ohio St.3d 215, 2010-Ohio-5071, 938 N.E.2d 329, at ¶ 22.  To determine whether a property owner qualifies as a charitable institution, we must examine the owner's " 'core activity.' " *Rural Health*, 145 Ohio St.3d 430, 2016-Ohio-508, 50 N.E.3d 486, at ¶ 23, quoting *Dialysis Clinic* at ¶ 30.  And the activity we review must relate to the property owner's actions; an owner cannot establish its status as a charitable institution by relying on the activities of a lessee or another related institution. *Northeast Ohio Psych. Inst. v. Levin*, 121 Ohio St.3d 292, 2009-Ohio-583, 903 N.E.2d 1188, ¶ 11; *see also First Baptist Church of Milford, Inc. v. Wilkins*, 110 Ohio St.3d 496, 2006-Ohio-4966, 854 N.E.2d 494, ¶ 15.

{¶ 14} Because Chagrin Realty admits that its sole use of the property is leasing it and leasing has not been found to constitute a use that is "exclusively for charitable purposes," the property does not qualify for exemption under R.C. 5709.12(B).  *See Northeast Ohio Psych. Inst.* at ¶ 11, 14-15.  Thus, Chagrin Realty must qualify for the charitable-use exemption, if at all, under R.C. 5709.121(A). *See Northeast Ohio Psych. Inst.* at ¶ 11, 14-15; *First Baptist Church of Milford* at ¶ 15-16; *Community Health Professionals, Inc. v. Levin*, 113 Ohio St.3d 432, 2007-Ohio-2336, 866 N.E.2d 478, ¶ 17-18.

## B.  The BTA reasonably and lawfully found that Chagrin Realty is not a charitable institution

{¶ 15} As its sole proposition of law, Chagrin Realty argues that the BTA erred in finding that it is not a charitable institution under R.C. 5709.12 and 5709.121.  Chagrin Realty emphasizes that it was organized for the sole purpose of holding title to property and collecting rental income for the benefit of the

Foundation, without a view toward profit. Chagrin Realty urges us to put substance over form and focus on its relationship with its parent (the Foundation) and the support that it provides to the Foundation.

*1. We must examine Chagrin Realty's "core activities"*

{¶ 16} "The determination whether a property owner qualifies as a charitable institution under R.C. 5709.121 requires examination of the 'core activity' of the institution and determining whether that activity qualifies as charitable for property-tax purposes." *Rural Health*, 145 Ohio St.3d 430, 2016-Ohio-508, 50 N.E.3d 486, at ¶ 23, quoting *Dialysis Clinic*, 127 Ohio St.3d 215, 2010-Ohio-5071, 938 N.E.2d 329, at ¶ 30. Chagrin Realty argues that its activities should be viewed in conjunction with the activities of the Foundation, because Chagrin Realty was organized for the sole purpose of holding title to property and collecting rental income for the benefit of the Foundation.

{¶ 17} Under the caselaw we discussed above, Chagrin Realty cannot establish its charitable status by relying on the activities of related entities. *See also OCLC Online Computer Library Ctr., Inc. v. Kinney*, 11 Ohio St.3d 198, 201, 464 N.E.2d 572 (1984). The BTA acknowledged the close relationships among Chagrin Realty, the CDC, and the Foundation but found that Chagrin Realty is itself a separate legal entity and that Chagrin Realty may not rely on vicarious exemption to establish its charitable status. *See Agley v. Tracy*, 87 Ohio St.3d 265, 268, 716 N.E.2d 951 (1999) ("A corporation is an entity separate and apart from the individuals who compose it; it is a legal fiction for the *purpose of doing business* [emphasis sic]"); *Northeast Ohio Psych. Inst.*, 121 Ohio St.3d 292, 2009-Ohio-583, 903 N.E.2d 1188, at ¶ 14. The BTA acted both reasonably and lawfully in determining that Chagrin Realty did not qualify for the charitable-use exemption "based on its own activities and use of the property," BTA No. 2011-2523, 2014 WL 2708168, *2 (Apr. 29, 2014).

**{¶ 18}** Chagrin Realty also argues that its income-producing lease, the proceeds of which inure to the benefit of the Foundation, supports its claimed charitable status. But this fact does not establish Chagrin Realty's status as a charitable institution because " '[i]t is only the use of *property* in charitable pursuits that qualifies for tax exemption, *not* the utilization of *receipts or proceeds* that does so' " (emphasis added), *Dialysis Clinic* at ¶ 33, quoting *Hubbard Press v. Tracy*, 67 Ohio St.3d 564, 566, 621 N.E.2d 396 (1993); *see also Northeast Ohio Psych. Inst.* at ¶ 16.

**{¶ 19}** In this regard, Chagrin Realty's reliance on *Akron Golf Charities, Inc. v. Limbach*, 34 Ohio St.3d 11, 516 N.E.2d 222 (1987), is misplaced. *Akron Golf Charities* involved a claim of sales-and-use-tax exemption under former R.C. 5739.02(B)(12) and did not involve a claim of real-property-tax exemption as in the instant appeal. Further, the sole purpose of Akron Golf Charities was to raise funds for local charitable organizations by staging golf tournaments. By contrast, Chagrin Realty engages in the ongoing business activity of leasing real property, an activity that generates substantial revenue and has not been found in other cases to be charitable in nature. *See Northeast Ohio Psych. Inst.* at ¶ 14, 16-17; *Dialysis Clinic*, 127 Ohio St.3d 215, 2010-Ohio-5071, 938 N.E.2d 329, at ¶ 33.

**{¶ 20}** Chagrin Realty also relies on *Rural Health*, 145 Ohio St.3d 430, 2016-Ohio-508, 50 N.E.3d 486, as support for its claimed status as a charitable institution. However, that case is materially distinguishable.

**{¶ 21}** In *Rural Health*, the property owner was engaged in a range of charitable activities, such as obtaining grants for tobacco cessation and pregnancy care and education, in addition to the ownership and leasing of a dialysis clinic. *Id.* at ¶ 25, 28. In contrast, the record here contains no indication that Chagrin Realty engaged in other activities; rather, Chagrin Realty admits that its "only purpose is to own property, collect income from the property, and distribute that income to the

Foundation." Therefore, Chagrin Realty's reliance on *Rural Health* is unpersuasive.

### 2. Chagrin Realty's status as a 501(c)(2) organization does not qualify it as a charitable institution under R.C. 5709.121

**{¶ 22}** Chagrin Realty also contends that it is a charitable institution based on limitations imposed on it as a 501(c)(2) organization. Relying on our precedents, the BTA reasonably and lawfully rejected this argument. Our precedents predicate entitlement to the charitable-use exemption on providing services "on a nonprofit basis to those in need, *without regard to race, creed, or ability to pay.*" (Emphasis added.) *Church of God in N. Ohio, Inc. v. Levin*, 124 Ohio St.3d 36, 2009-Ohio-5939, 918 N.E.2d 981, ¶ 19, citing *Vick v. Cleveland Mem. Med. Found.*, 2 Ohio St.2d 30, 31, 206 N.E.2d 2 (1965), paragraph two of the syllabus. Federal tax laws, in contrast, provide for a charitable-use exemption on a less restrictive basis. *Dialysis Clinic*, 127 Ohio St.3d 215, 2010-Ohio-5071, 938 N.E.2d 329, at ¶ 26, quoting M. Hall & J. Colombo, *The Charitable Status of Nonprofit Hospitals: Toward a Donative Theory of Tax Exemption*, 66 Wash.L.Rev. 307, 320-321 (1991), quoting Rev.Rul. 69-545, 1969-2 C.B. 117 (the Internal Revenue Service " 'abandoned the charity care requirement' " and " 'adopted a "per se" rule' " that " 'an entity engaged in the "promotion of health" for the general benefit of the community is pursuing a charitable purpose, *even though a portion of the community, such as indigents, are* [sic] *excluded from participation*' " [emphasis added in *Dialysis Clinic*]).

**{¶ 23}** Chagrin Realty's reliance on its 501(c)(2) federal status in support of its claimed charitable status is unavailing because it conflates Ohio's property-tax exemption with inapplicable federal standards for tax-exempt charities. Indeed, we have specifically rejected "a reading of R.C. 5709.121 that essentially substitutes [the] more lenient federal-law standards for the well-developed Ohio law of charitable use." *Id.* at ¶ 26.

8

**{¶ 24}** Moreover, we are not persuaded by Chagrin Realty's references to out-of-state decisions analyzing other states' tax-exemption statutes and allowing exemption under those statutes based on an entity's federal-tax-exemption status and that entity's relationship to its parent corporation. As we have stated, " 'tying charitable use so tightly to Congress's policy goals is wrong because Congress does not define the scope of charitable use under Ohio law.' " *Id.* at ¶ 25, quoting *NBC-USA Hous., Inc.-Five v. Levin*, 125 Ohio St.3d 394, 2010-Ohio-1553, 928 N.E.2d 715, ¶ 20.

### III. CONCLUSION

**{¶ 25}** Chagrin Realty's expansive construction of the charitable-use exemption is inconsistent with our precedents interpreting R.C. 5709.121(A). Because the BTA's factual findings are supported by the record in this case, they merit our deference. *See HealthSouth Corp.*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, at ¶ 10. Accordingly, we reject Chagrin Realty's sole proposition of law and affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and FRENCH, FISCHER, and DEGENARO, JJ., concur.

O'DONNELL, KENNEDY, and DEWINE, JJ., concur in judgment only.

————————————

Brouse McDowell, L.P.A., Terry Vincent, and Anastasia J. Wade, for appellant and cross-appellee.

Michael DeWine, Attorney General, and Sophia Hussain and Barton Hubbard, Assistant Attorneys General, for appellee and cross-appellant.

————————————